UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORIE ANN FOOCE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 2:17-cv-73

HON. TIMOTHY P. GREELEY

## **OPINION**

    This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Lorie Ann Fooce seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and Title XVI of the Social Security Act. Plaintiff filed an initial brief on September 13, 2017. (ECF No. 14). The Commissioner filed a response brief on October 11, 2017. (ECF No. 15). Both parties consented to proceed before a Magistrate Judge. (ECF No. 10). This matter is ready for decision.

    Plaintiff was born on October 11, 1967. (PageID.309). She is five feet tall and weighs in excess of 250 pounds.[1] Plaintiff has a high school diploma and has previously worked as a certified nursing assistant, a custodian, and a housekeeper. Plaintiff alleges that she became

---

[1] At the 2009 hearing, Plaintiff weighed 289 pounds. (PageID.63). At the 2011 hearing, she weighed 273 pounds. (PageID.114).

disabled on April 23, 2009, when she injured her back while working as a certified nursing assistant.

On June 17, 2009, Plaintiff filed an application for DIB. (PageID.261-266). The alleged onset date was April 23, 2009, and her last insured date was December 31, 2014. (PageID.261, 309). After her initial application was denied, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (PageID.30). On May 4, 2011, the ALJ held an administrative hearing in which Plaintiff was represented by Attorney Rudolph F. Perhalla. (PageID.48-79). At the hearing, Plaintiff testified that her primary complaint is her lower back pain and anxiety. (PageID.61). She stated that she had gained 50 pounds since she quit work. (PageID.63). Plaintiff lives with her mother and spends most of the day sitting or lying down. (PageID.56). Although her mother did the majority of the cooking and washing the dishes, Plaintiff would help with some of the other cleaning around the house. Plaintiff also stated that she has trouble sleeping and could walk about a half of a block and sit for "like an hour, hour and half." (PageID.65).

On July 12, 2011, the ALJ issued his decision finding that Plaintiff was not disabled. (PageID.35-44). Plaintiff requested the Appeals Council to review the ALJ's decision, but the request was denied on February 7, 2013. (PageID.23-25). Plaintiff then filed a complaint in this Court. *See Fooce v. Commissioner of Social Security*, Case No: 2:13-cv-126 (W.D. Mich.). In that case, the parties filed a joint stipulation for dismissal, and the Court subsequently entered a judgment reversing and remanding the Commissioner's decision. (PageID.152).

Following the remand, the ALJ held a second administrative hearing on November 19, 2014. (PageID.104-127). At this hearing, Plaintiff's testimony was largely similar to her testimony at the first hearing. She stated that she was in constant pain and had trouble standing and walking. Plaintiff testified the she is taking Effexor for her anxiety, and Flexeril and Motrin

for her back pain, and Flexeril, Glyburide, and Metformin for her diabetes. (PageID.112-114). She stated that she tried physical therapy and a pain injection, but her conditions did not improve. (PageID.113-114).

On January 15, 2015, the ALJ issued his decision finding that Plaintiff was not disabled. (PageID.88-99). In the opinion, the ALJ's states that the Appeals Council remanded the case to him to further evaluate a treating source's statement, Plaintiff's obesity, and a November 2010 MRI. (PageID.88). The ALJ's decision became the Commissioner's final decision on February 14, 2017, when the Appeals Council denied Plaintiff's request for review. (PageID.81-83).

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson*

*v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Mullen*, 800 F.2d at 545.

The ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's residual functional capacity, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines Plaintiff is not disabled under any step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). If the ALJ can make a dispositive finding at any point in the review, no further finding is required. 20 C.F.R. § 404.1520(a).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

Here, the ALJ determined that Plaintiff's claim failed at step five of the analysis. He first found at step one that Plaintiff had not engaged in substantial activity since April 23, 2009. At step two, the ALJ determined that Plaintiff had the following severe impairments—degenerative disk disease of the lumbar spine, obesity, diabetes mellitus, and an anxiety disorder. At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1.

With respect to Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work with the following limitations:

> she can never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, crouch, kneel or crawl. In addition, the claimant must avoid concentrated exposure to the use of moving machinery and unprotected heights; and she is limited to unskilled work involving simple, routine and repetitive tasks, no interaction with the public and only occasional interaction with coworkers, only work that allows individually performed tasks, and she is allowed off task 10% of her workday in addition to regularly scheduled breaks.

(PageID.92-93.) This determination was based on the objective medical evidence, the course of treatment, Plaintiff's credibility, and her daily activities. The ALJ summarized Plaintiff's medical records as follows:

> The medical indicates the claimant did seek treatment relative to complaint of low back pain related to a work injury in April 2009. On exam at that time, Dr. Richard Chaltry, D.O., noted that she had some scoliosis and that there was tenderness and spasm in the perispinal muscles. An x-ray of the lumbar spine at that time revealed degenerative changes in both sacroiliac join[t]s and sacralization of L5 on the left. She was assessed with a low back sprain and referred to physical therapy where on evaluation, it was noted that she was morbidly obese, weighing in excess of 250 pounds at a height of 5 feet. Her obesity caused ribcage elevation and poor posture because her large breasts pulled her upper body forward. Given the fact that she was extremely overweight, the therapist advised there was little more that could be done for her; and, in May 2009, she was discharged in a mildly improved status to follow a home exercise program. While she was referred to nutritional therapy due to her obesity, she refused this due to financial reasons. In May 2009, Dr. Chaltry indicated that the claimant was unable to return to work as a nurse's aide, and he concurred that her main problem was the fact that she was extremely overweight (Exhibits 1F-3F).
>
> After the claimant's initial treatment for her low back strain, she then received a couple of injections but was mostly maintained on medication. She had physical examinations that were within normal limits. A November 2010 MRI of the claimant's lumbar spine revealed bulging discs at several levels with a possible lateral protrusion of the disc of Ll-L2 on the left side. According to a July 2014 treatment note, the claimant's low back pain was kept "under control" with Motrin and Flexeril. The claimant's treatment records also reveal that the she has been diagnosed with diabetes mellitus, which is well controlled with medication (Exhibits 9F, l0F, 14F, 15F).

(PageID.94-95).

Relying on the testimony of the vocational expert, the ALJ found that a person with the same age, education, work experience, and residual functional capacity as Plaintiff would be able to perform jobs that exist in significant numbers in the national economy, such as an "inspector/tester with 200-500 jobs in Michigan and 6-8,000 jobs nationally; production worker with 500-1,000 jobs in Michigan and 6-8,000 jobs nationally; and machine tender with 200-500

jobs in Michigan and 4-6,000 nationally." (PageID.99.) Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

Plaintiff complains that the ALJ erred when evaluating the medical opinion of Dr. Richard Chaltry. The record establishes that Dr. Chaltry treated Plaintiff over several years, therefore, Dr. Chaltry is considered a treating source. Generally, a treating physician's medical opinion is entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). If an ALJ affords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for discounting the opinion. *Id.* at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

On May 28, 2009, Dr. Chaltry signed a one-page "Return to Work Release" form. (PageID.479). Although Dr. Chaltry wrote Plaintiff was "unable to work – see note of 5/26" in the comment section of the form, he did not fill out the portion of the form that specified any restrictions. In the May 26 note, Dr. Chaltry states that he had a conversation with Plaintiff's physical therapist and the therapist informed him that Plaintiff cannot lift more than 25 pounds, cannot reach, and is "not able to perform at her place of employment[.]" (PageID.478). In his decision, the ALJ explained why he only gave Dr. Chaltry's opinion some weight:

> The undersigned has considered Dr. Chaltry's brief statements about the claimant's functioning and gives them some weight. The

> undersigned notes that Dr. Chaltry's notes reflect the observations the physical therapist made about her observations about the claimant's abilities during the time that the claimant was healing from the lumbar strain. As discussed above, the evidence in the years since then does not show that the claimant is unable to reach or has excessive shortness of breath; and those determinations are given little weight. Instead, the evidence reveals that, while the claimant has obesity and mild degenerative disk disease, she has required only conservative treatment for it and has gone without any medical care for it for over one years' time. In any event, similar to Dr. Chaltry's assessment, the residual functional capacity described above also precludes the claimant from performing her past relevant work as a certified nurse's assistant, which is of a medium exertional level, and limits her lifting to a maximum of 10 pounds.

(PageID.96-97).

The ALJ did not err when evaluating Dr. Chaltry's medical opinion. First, Dr. Chaltry's medical opinion that Plaintiff "is 'unable to work' is not a medical opinion that may be given controlling weight because it is an opinion on an issue reserved to the Commissioner." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x. 430, 432 (6th Cir. 2016)(citing 20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). In addition, contrary to Plaintiff's assertion, Dr. Chaltry did not state that Plaintiff "is unable to perform *any* work." (PageID.662) (emphasis added). Instead, Dr. Chaltry's reference to the May 26 note makes clear that he was referring to Plaintiff's position as a certified nursing assistant, where she was required to help lift patients in-and-out of hospital beds. Moreover, Plaintiff does not offer any explanation for her argument that Dr. Chaltry's opinion establishes that she cannot perform sedentary work. (PageID.479). Notably, the ALJ still considered Dr. Chaltry's opinion when he determined that Plaintiff could not perform past relevant work as a certified nurse's assistant.

Plaintiff next complains that the ALJ erred when considering the opinion of consultative examiner, Dr. James E. Rocco. Dr. Rocco gave his opinion on March 5, 2014. (PageID.535-544). He opined that, in an 8-hour workday, Plaintiff could sit for 4 hours, stand for

30 minutes and walk for 30 minutes. Dr. Rocco stated Plaintiff could only occasionally, reach, handle, finger, feel, and push/pull for both her right and left hand. Dr. Rocco also stated that Plaintiff could occasionally climb stairs and ramps, but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. In addressing Dr. Rocco's opinion, the ALJ stated:

> The undersigned has considered the opinion of Dr. Rocco and gives it some weight. Dr. Rocco appears to have considered the claimant's obesity very functionally limiting; and the undersigned has provided for this in the above-described residual functional capacity. However, the claimant has a "mild minimal" back condition with an "under control" pain level that should not prohibit her from sitting for a full 6 hours as required by sedentary work. The claimant's treatment records show that she has had intermittent, conservative treatment with physical examinations that were within normal limits. Thus, while overall the undersigned gives Dr. Rocco's opinion little weight, the fact that he concluded that the claimant's obesity imposes functional limitations has been considered in resolving that she can perform the residual functional capacity for the range of sedentary work described above.

(PageID.96).

Plaintiff argues that the ALJ erred when evaluating Dr. Rocco's medical opinion because:

> It is improper for an ALJ to send a claimant to a doctor and when the doctor finds limitations, find that doctor incredible. Further, the ALJ found Dr. Rocco incredible only when the doctor's findings did not support the ALJ's conclusions. The ALJ did find Dr. Rocco credible on the obesity issue. That is another error.

(PageID.659). Plaintiff is incorrect. An examining source is not entitled to any specific weight. See 20 C.F.R. 404.1527. As the ALJ noted, Dr. Rocco's opinion contradicted the majority of the medical record, most notably that Plaintiff has only "mild minimal degenerative changes" in her lumbar spine, (PageID.622) and her back pain was "under control," (PageID.591). His opinion also contradicted Plaintiff's medical records that found Plaintiff ambulated without difficulty. (PageID.608). Finally, Dr. Rocco's opinion contradicted his own examination which revealed

that the Plaintiff could "pick up a coin and tie shoelaces." (PageID.538). Accordingly, the ALJ did not err when evaluating Dr. Rocco's medical opinion.

Plaintiff also appears to argue that the ALJ erred when he failed to give controlling weight to the opinion of Dr. Anthony Holzgang. Dr. Holzgang is a psychiatrist. In 2001, Dr. Holzgang wrote that Plaintiff's "mental conditions very much complicate her ability to adjust to stress in life and contribute, along with her physical problems, to her difficulty working." (PageID.533). However, as the ALJ correctly noted, Dr. Holzang's letter was dated, conclusory, and failed to provide any explanation of the evidence relied on in forming the opinion. Thus, the ALJ did not err when evaluating Dr. Holzang's opinion.

Plaintiff argues that the ALJ did not properly consider Plaintiff's obesity in compliance with SSR 02-1P. She claims that the ALJ "merely states that [Plaintiff] suffers with obesity, that it impairs [Plaintiff] and that [Plaintiff] can perform sedentary work." (PageID.658). SSR 02-1p provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). While SSR 02-1p provides guidance for evaluating a claimant's obesity, the rule "does not mandate a particular mode of analysis, but

merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec*, 359 F. App'x. 574, 577 (6th Cir. 2009).

Here, the ALJ adequately considered Plaintiff's obesity throughout his opinion. The ALJ first found that Plaintiff's obesity was a severe impairment. The ALJ next found that although Plaintiff's obesity was severe, "the signs, symptoms and laboratory findings . . . are not of such severity as found in any listing." (PageID.91). The ALJ continued:

> As directed by the Appeals Council, the undersigned will now specifically address the claimant's obesity. The medical evidence documents that the claimant has been assessed with obesity. Pursuant to Social Security Ruling 02-1 p, the combined effects of obesity with other impairments may be greater than might be expected without obesity. For instance, that Ruling also advises that, if someone has obesity with arthritis affecting a weight-bearing joint, he or she may have more pain and limitation than might be expected from arthritis alone. In this case, even though the claimant does not suffer from arthritis, the principle is still applicable to the claimant's back pain conditions. The claimant's obesity may increase the pain and limitation that she experiences regarding these conditions. Indeed, Dr. Chaltry and the claimant's physical therapist both commented that the claimant's obesity is the primary reason that she has difficulty doing some activities (Exhibits 1F - 3F). Considering the claimant's obesity combined with her back condition, the undersigned determines that a residual functional capacity for a reduced range of sedentary work is the most appropriate. The claimant's symptoms are provided for in the very reduced exertional level as well as postural and environmental limitations.

(PageID.95). Accordingly, the ALJ adequately considered the effects of Plaintiff's obesity.

Finally, Plaintiff argues that it was improper for the ALJ to be critical of Plaintiff's lack of medical treatment because Plaintiff did not have health insurance. The ALJ referenced Plaintiff's lack of medical treatment when evaluating her credibility. "The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be

under a disabling condition." *Strong v. Social Sec. Admin.*, 88 F. App'x. 841, 846 (6th Cir. 2004) (citing *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990)). Here, the ALJ determined that Plaintiff was not suffering from a disabling condition. This determination is supported by substantial evidence including the fact that Plaintiff only has a "mild minimal" back condition, which is "under control" when taking medication.

In sum, this Court finds that there is substantial evidence to support the Commissioner's decision that Plaintiff was not disabled between April 23, 2009, and December 31, 2014, as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

Dated: May 30, 2018

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE